IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TINA HESTER                                                                    PLAINTIFF

vs.                                                          CIVIL ACTION NO. 1:15CV216-SAA

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Tina Hester seeks judicial review under 42 U.S.C. § 405(g) of the decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Section 223 of the Social Security Act. Plaintiff protectively filed an application for DIB on January 11, 2012, alleging disability beginning on October 14, 2011. Docket 10, p. 204. Her claim was denied initially on March 5, 2012, and upon reconsideration on April 2, 2012. *Id.* at 78-81, 83-85. She filed a request for hearing and was represented by counsel at the hearing held on May 8, 2014. *Id.* at 26-75. The Administrative Law Judge (ALJ) issued an unfavorable decision on July 21, 2014, (Docket 10, p. 8-20) and on October 27, 2015, the Appeals Council denied plaintiff's request for a review. *Id.* at 1-3. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, the undersigned held a hearing on November 2, 2016, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on January 11, 2012 and was forty-three at the time of the hearing. Docket 10, p. 35. She completed ninth grade and later received her GED. *Id.* at 37. Plaintiff's past relevant work was as a bundler, customer service representative, caregiver, fabric cutter and line supplier. *Id.* at 18. Plaintiff contends that she became disabled before her application for benefits due to "disc degeneration, two spinal fusions and osteoarthritis." *Id.* at 208.

The ALJ determined that plaintiff suffered from "severe" impairments including degenerative disc disease status post spinal fusion, osteoarthritis, and migraines, (Docket 10, p. 13), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). *Id.* at 14. Based upon testimony by the vocational expert [VE] at the hearing and considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can light [sic] and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand, walk and/or sit for 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs. He can occasionally stoop, kneel, balance, crouch and crawl. The claimant must avoid concentrated exposure to pulmonary irritants such as dust, odors, fumes and gases. The claimant requires a sit/stand option.

Docket 10, p. 14. Upon further analysis under applicable rulings and regulations, the ALJ found plaintiff to be less than fully credible in that the intensity, persistence and limiting effects she claimed due to her symptoms were "not entirely credible." *Id.* at 16. After evaluating all of the evidence in the record, including testimony of a VE, the ALJ held that plaintiff could perform her previous work as a customer service representative, and other jobs that exist in the national

economy such as a cashier, ticket seller, and storage rental clerk. *Id.* at 19. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.*

Plaintiff contends that the ALJ erred because she failed to properly consider the opinions of the agency's own examining physician and because she did not properly consider plaintiff's credibility.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b)(2010).

[4] 20 C.F.R. §§ 404.1520(c)(2010).

[5] 20 C.F.R. §§ 404.1520(d). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

3

physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence

---

[6] 20 C.F.R. §§ 404.1520(e)(2010).

[7] 20 C.F.R §§ 404.1520(g) (2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The crux of this case is the relative weight given by the ALJ to the differing opinions bearing on the plaintiff's RFC offered by the two DDS consulting physicians, Dr. Thomas Jeffcoat and Dr. Michael Morris. Dr. Jeffcoat reviewed only the plaintiff's medical records prior to the plaintiff's February 28, 2012 spinal fusion surgery, did not physically examine her at any point, and made a prospective assessment of the plaintiff's post-surgery RFC as of October 14, 2012, while Dr. Morris based his assessment on a personal examination of the plaintiff post-surgery on December 29, 2012. Docket 10, pp. 363-70, 580-83. Further, Dr. Jeffcoat predicted the plaintiff's exertional limitations would include lifting 20 pounds occasionally, lifting 10 pounds frequently, and standing, walking and/or sitting for 6 hours in an 8-hour workday, while Dr. Morris concluded the plaintiff's actual impairments permitted her to lift less than 10 pounds occasionally, to stand and/or walk for 4 hours in an 8-hour workday, and to sit for only 1.5 hours in an 8-hour workday and for only 10 minutes without interruption. *Id.* In response to hypotheticals posed by the ALJ, the vocational expert ("VE") opined that a person who could sit for 6 hours in an 8-hour workday (as Dr. Jeffcoat assessed the plaintiff would be able to do) is

5

capable of performing the plaintiff's past work as a customer service representative, but when given a hypothetical that included the sitting limitations noted by Dr. Morris, the VE testified that the person would be unable to perform either the plaintiff's past work or other jobs in the regional or national economy. *Id.* at 66-67.

In reaching a decision as to the plaintiff's RFC, the ALJ gave Dr. Jeffcoat's opinion "great weight" while giving Dr. Morris's opinion "limited weight." *Id.* at pp.20-21. Further, the ALJ found the plaintiff's own testimony regarding her claimed limitations – which were more consistent with Dr. Morris's assessment than with Dr. Jeffcoat's – to be "not entirely credible." *Id.* at 20. The ALJ concluded the plaintiff could sit for 6 hours in an 8-hour workday and, apparently relying on the vocational expert's testimony regarding jobs with a sit/stand option, the ALJ found the plaintiff capable, with a sit/stand option, of performing both her past relevant work as a customer service representative and other jobs in the national economy. *Id.* at 18, 22. The plaintiff argues the ALJ's decision is not supported by substantial evidence as she did not properly weigh the opinions of the two consulting physicians and improperly discounted the plaintiff's testimony. The court agrees.

Without doubt the responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, she is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary*

6

*of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). As established by the Fifth Circuit, "an ALJ may not rely on [her] own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995).

With respect to an ALJ's reliance on a non-examining physician's opinion, the Fifth Circuit has stated it "may be true" that as a matter of law, the reports of non-examining physicians do not provide substantial evidence "when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)). "We believe an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa*, 895 F.2d at 1024.

It is not clear what records Dr. Jeffcoat reviewed as his brief, check-box report does not contain a list of evidence he considered. The ALJ commented nonetheless that Dr. Jeffcoat's opinion was "based upon a detailed review of claimant's medical history, and submitted reports by claimant." Docket 10, p. 17. The fact is, however, that Dr. Jeffcoat's report was based entirely on records for the time period prior to the plaintiff's second surgery and contains only a prospective assessment – essentially a prediction – of the plaintiff's post-surgery condition. Dr. Morris, on the other hand, physically examined the plaintiff after her second surgery.

7

It is clear that the findings of Dr. Jeffcoat, who did not examine the plaintiff, contradict those of Dr. Morris, who did examine the plaintiff. According to the Fifth Circuit, those facts alone may render improper as a matter of law the ALJ's reliance on Dr. Jeffcoat's assessment. However, such a finding is unnecessary, as the additional facts regarding the timing of the two reports render Dr. Jeffcoat's findings even more unreliable relative to Dr. Morris's.

The ALJ's conclusion that Dr. Morris's findings are undercut by his own statement that he believed the plaintiff had a "minimal disability" is misplaced, as the ultimate issue of a plaintiff's disability is reserved to the Commissioner, who is not to give any special significance to a medical source's opinion on that issue. 20 CFR § 404.1527(d). Rather, it is the medical source's medical findings and other supporting evidence that is to be reviewed in making that determination. *Id.*

The ALJ's assessment of the plaintiff's credibility is flawed as well. In contrasting the plaintiff's claimed limitations with her ability to perform ordinary functions, the ALJ in her decision stated the plaintiff "has no problems taking care of her personal needs, doing laundry, grocery shopping and attending church three times per week." Docket 10, p.20. However, the plaintiff actually testified she had problems in each of those regards. She testified to difficulty dressing, needing help to put on socks or stockings. Docket 10, p.47. She testified that to do her laundry she must wait until her husband is home so he can pick up the laundry and carry it to the washroom for her. Docket 10, p.48. She testified she needs her husband's assistance for grocery shopping as well because she is unable to reach things, to pick up items that are too low, or to pick up items such as bottled water. Docket 10, p.48. With respect to attending church, the plaintiff testified that, due to her lower back pain, she could sit only 20 to 30 minutes at time

8

before having to get up and walk out for a few minutes. Docket 10, p. 46. Clearly the ALJ misstated the evidence on these matters.

In fashioning a limitations hypothetical that, according to the vocational expert, would allow the performance of the plaintiff's past relevant work, the ALJ relied on the findings of a non-examining physician whose report predates the plaintiff's second surgery and contradicts the findings of a physician who examined the plaintiff post-surgery, and the ALJ discounted the plaintiff's testimony based, at least in part, on a misstatement of the evidence that was presented. The court finds there is no substantial evidence supporting such a hypothetical, and a vocational expert's testimony based upon a defective hypothetical cannot itself constitute substantial evidence of a non-disability. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). The court concludes the ALJ's decision is not supported by substantial evidence.

## IV. DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the record supports the hypothetical that the vocational expert testified would not permit the performance of the plaintiff's past relevant work or other jobs in the national economy. This diminishes – if not outright eliminates – the need for a remand for further consideration of the disability issue. Additionally, the plaintiff has been very patient. She has been seeking benefits

9

through the administrative processes for over four years.[11] The court finds the evidence is conclusive that the plaintiff is disabled, and that an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare, and will avoid further undue delay which would result upon remand for additional review. The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ is not supported by substantial evidence, that a substantial number of jobs do not exist in Mississippi or the national economy that plaintiff can perform due to her limitations, and that plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 17th day of November, 2016.

       /s/ Roy Percy
      UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiff protectively filed her applications for benefits on January 10, 2012.